654 So.2d 628 (1995)
DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES, Appellant,
v.
Jerry EDWARDS, Appellee.
No. 93-2429.
District Court of Appeal of Florida, First District.
May 5, 1995.
*629 Floyd A. Hennen, Florida Dept. of Agriculture and Consumer Services, Tallahassee, for appellant.
Joan Stewart, Florida Police Benevolent Ass'n, Inc., Tallahassee, for appellee.
JOANOS, Judge.
The Department of Agriculture and Consumer Services (Department) appeals a final administrative order of the Public Employees Relations Commission (Commission) directing the Department to reinstate appellee, Jerry Edwards, to his position as a law enforcement officer with the Department's Inspection Division. The issues raised by the Department are: (1) whether this cause was rendered moot due to the circuit court's dismissal of the related criminal charge against Edwards; (2) whether the hearing officer should have treated the tape recording incident giving rise to Edwards' dismissal and the criminal charge against him, as a criminal investigation, rather than as a disciplinary proceeding; and (3) whether the hearing officer's finding that Edwards intentionally recorded his supervisor's oral communications requires reversal of the Commission's order. We affirm in part and reverse in part.
Edwards had been employed by the Department as a law enforcement officer since September 6, 1980. At all times pertinent to this appeal, Edwards held permanent status in the State Career Service system. For the six years preceding the incident at issue in this case, Edwards worked at Station 14 located at State Road 301 and U.S. Highway 1, near the Florida/Georgia line. On June 15, 1992, Edwards learned that he was to be transferred to Station 16, located at Interstate 95 near Yulee, Florida.[1] On June 19, 1992, Edwards discussed the transfer with Sergeant Helen Burch, his immediate supervisor at Station 14. During this conversation, Edwards advised Sergeant Burch that he intended to file a grievance about the transfer. On Friday, June 26, 1992, Edwards's last work day at Station 14, he showed Officers Spurlock and Van Zant a voice-activated tape recorder. Edwards told Officer Spurlock that he intended to use the tape recorder "to get the lead workers and supervisors." Officer Van Zant said Edwards had heard rumors that his transfer to Interstate 95 was motivated by Scott Gearis's intent "to straighten him [Edwards] out." Edwards told Officer Van Zant that he intended to tape what was said and write it down at a later date. Officer Spurlock warned Sergeant Burch that Edwards intended to record his supervisors' statements; Officer Van Zant told the sergeant that Edwards intended to record Scott Gearis. Sergeant Burch then contacted Captain Pittman, and relayed the information received from Officers Spurlock and Van Zant. Lieutenant Wells was assigned to investigate the allegations concerning Edwards.
On Monday, June 29, 1992, Edwards reported for his first duty day at Station 16. His shift began at 3:00 p.m. Lieutenant Wells entered the station at 4:00 p.m., posing *630 as a citizen who wished to bring horses into the state. He observed a bulge in Edwards's right shirt pocket, which he concluded matched the dimensions of a tape recorder. Lieutenant Wells then met Major O'Brien and Captain Pittman at a predetermined locale, removed from Station 16. O'Brien and Pittman both had observed what they believed to be a tape recorder in Edwards's shirt pocket. At that point, Lieutenant Wells advised the others that he believed there was probable cause to question Edwards concerning whether he had a concealed tape recorder on his person.
The three men returned to Station 16. Upon their arrival, Captain Pittman asked Edwards to step into Sergeant Taylor's office. Major O'Brien and Sergeant Taylor were already in the office. Lieutenant Wells followed Edwards and Captain Pittman into the room. After some small talk, during which Major O'Brien asked Edwards whether he had received a response from his grievance, Lieutenant Wells identified himself and asked Edwards if he had a tape recorder. Edwards responded affirmatively, and immediately produced the tape recorder. Lieutenant Wells ascertained the tape recorder was turned on, then placed Edwards under arrest for violation of section 934.03, Florida Statutes, which prohibits, among other things, the interception of oral communications. Edwards was handcuffed and transported to the county jail.
On September 24, 1992, the Department terminated Edwards's employment as a law enforcement officer for the Inspection Division. As grounds therefor, the Department charged that Edwards violated agency rules, regulations, policies or procedures, and exceeded his law enforcement authority. In his recommended order, the hearing officer found Edwards had reason to believe that Captain Pittman's approach was disciplinary in nature, and that Edwards turned the tape recorder on for the specific purpose of recording their conversation. Citing to State v. Inciarrano, 473 So.2d 1272, 1275 (Fla. 1985), the hearing officer found the controlling question was whether law enforcement personnel conducting a disciplinary investigation of another law enforcement officer have a reasonable expectation of privacy. The hearing officer concluded that in the public sector, an investigator or law enforcement supervisor does not possess a reasonable expectation of privacy when interrogating a law enforcement officer under circumstances that can lead to disciplinary action. The hearing officer further concluded the Department failed to demonstrate that Edwards intercepted an "oral communication" as defined by statute. Based on that determination, the hearing officer recommended that Edwards' dismissal be vacated, and that he be awarded back pay, costs, and reasonable attorney's fees.
The Commission stayed its ruling on the recommended order, pending the outcome of the criminal charges against Edwards. On May 28, 1993, the Nassau County Circuit Court issued an order granting Edwards's motion to dismiss the information, pursuant to Florida Rule of Criminal Procedure 3.190(c)(4). The state filed a notice of appeal of the order dismissing the criminal charge against Edwards. Thereafter, the Commission issued its final order, adopting the hearing officer's findings of fact.[2] The Commission held that because a court of competent jurisdiction had ruled there were insufficient grounds to support the charge that Edwards violated section 934.03(1), the Department did not have cause to discipline Edwards for this rule violation. The Commission further found that Edwards could not be disciplined for exceeding his law enforcement authority, because the evidence demonstrated he was not exercising any law enforcement authority when he intercepted any communications.
During the pendency of this administrative appeal, a different panel of this court reversed the circuit court's order dismissing the charge against Edwards in the related criminal appeal. See State v. Edwards, 645 So.2d 588 (Fla. 1st DCA 1994) (Edwards I). In its ruling, the court adopted the rationale set forth in State v. Sells, 582 So.2d 1244 *631 (Fla. 4th DCA 1991), which presented a fact scenario virtually identical to the facts underlying the instant case. In Sells, the court reasoned that although the official being recorded fully expected the recording to take place, the question whether section 934.02(3), Florida Statutes, had been violated should be submitted to the jury.
When an agency terminates the employment of a career service employee on certain stated grounds, the agency must affirmatively prove the essence of the allegations by a preponderance of the evidence. Florida Department of Health and Rehabilitative Services v. Career Service Commission, 289 So.2d 412, 414-415 (Fla. 4th DCA 1974). The only limitation on agency discretion to dismiss an employee is that the action must be supported by competent substantial evidence. State, Department of General Services v. English, 534 So.2d 726, 729 (Fla. 1st DCA 1988); Board of Regents v. Videon, 313 So.2d 433, 435 (Fla. 1st DCA 1975).
The first issue raised by the Department was resolved by Edwards I. Nevertheless, the decision in Edwards I, reversing the dismissal of the criminal charges against Edwards, does not resolve the issues presented in this administrative appeal. Since different agencies may consider the actions or conduct of an employee in different contexts, the outcome of the related, but different, proceedings need not be the same. Walley v. Florida Game and Fresh Water Fish Commission, 501 So.2d 671, 674 (Fla. 1st DCA 1987); In re Alcoholic Beverages Seized from Saul's Elks Club, 440 So.2d 65, 67 (Fla. 1st DCA 1983). See also Kinney v. Department of State, 501 So.2d 129, 133 (Fla. 5th DCA 1987).
The second issue concerns the hearing officer's determination that an investigator or law enforcement supervisor does not possess a reasonable expectation of privacy in the interrogation of a law enforcement officer, under circumstances that can lead to disciplinary action. In reaching this conclusion, the hearing officer considered the procedures employed by the Commission when it hears an appeal from the dismissal of a permanent career service employee, pursuant to section 447.207(8), Florida Statutes. In the course of such an appeal, all relevant aspects of the disciplinary investigation may be subjected to public scrutiny. The hearing officer further noted that disciplinary records and information are not included in the items specifically exempt from disclosure by section 119.07(3), Florida Statutes, the Public Records Act. In addition, the Florida Constitution contemplates that public business is to be conducted in the "sunshine." Reasoning from this open-government premise, and the fact that all persons claiming an expectation of privacy in this case were public employees acting in furtherance of their public duties, the hearing officer concluded that any statements made by Pittman, O'Brien, and Wells in performance of their public duties were not privileged, hence no reasonable expectation of privacy attached to those statements.
The Department takes the position that the Edwards's matter was a confidential criminal investigation, and the events of June 29, 1992, were conducted with a total expectation of privacy. The Department also contends that, due to the limited field of expertise of the hearing officer and the Commission, their findings that the June 29, 1992, incident constituted a "disciplinary interview" are entitled to no special deference. We cannot agree.
The Commission's interpretation of chapter 447 is entitled to great deference. See Public Employees Relations Commission v. Dade County Police Benevolent Association, Inc., 467 So.2d 987, 989 (Fla. 1985); State, Department of Administration v. Public Employees Relations Commission, 443 So.2d 258 (Fla. 1st DCA 1983); Board of Regents v. Public Employees Relations Commission, 368 So.2d 641 (Fla. 1st DCA), cert. denied, 379 So.2d 202 (Fla. 1979). "[A] reviewing court must defer to an agency's interpretation of an operable statute as long as that interpretation is consistent with legislative intent and is supported by substantial, competent evidence." PERC v. Dade County PBA, 467 So.2d at 989. Application of that deference to the facts of this case indicates the investigation should be construed as primarily disciplinary. The Department's *632 interest in the possible violation of section 934.03(1) related solely to discipline of a permanent career service employee.
The third issue raised in this appeal concerns the propriety of the Department's decision to terminate Edwards's employment. Since that dismissal was based upon the alleged violation of section 934.03(1), we must determine whether the protection afforded by the statute is applicable in the circumstances of this case. Pursuant to section 934.03(1)(a) and (4), any person who "[i]ntentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication," is guilty of a third-degree felony. "Oral communication" is defined in section 934.02(2), Florida Statutes, which provides:
"Oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation and does not mean any public oral communication uttered at a public meeting or any electronic communication.
"[F]or an oral conversation to be protected under section 934.03 the speaker must have an actual subjective expectation of privacy, along with a societal recognition that the expectation is reasonable." State v. Smith, 641 So.2d 849, 852 (Fla. 1994).
In State v. Walls, 356 So.2d 294, 296 (Fla. 1978), the supreme court held that the electronic recording of an oral communication without the consent of all parties to the communication was prohibited by section 934.03, Florida Statutes. Later, in State v. Tsavaris, 394 So.2d 418, 421 (Fla. 1981), the court held that one party's recording of a telephone conversation without the consent of the other party constitutes a violation of section 934.02(3), Florida Statutes. In each instance, the focus of the court's decision was the absence of consent to the recording by one of the parties to the conversation.
More recently, in State v. Inciarrano and State v. Smith, the court's focus was upon the two-part test set forth in Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967), i.e., (1) the speaker's actual subjective expectation of privacy in his oral communications, and (2) whether society is prepared to accept that expectation as reasonable. In Inciarrano, the accused went to the victim's office where, unbeknownst to him, a recording device in the victim's desk recorded the ensuing conversation between the accused and the victim, together with the sound of five shots, several groans, the gushing of blood, and the victim's fall from his chair to the floor. 473 So.2d at 1274. Inciarrano conceded that his voice was on the recording, but moved to suppress the tape on the ground that the recording was made without his consent within the contemplation of Walls and Tsavaris. The supreme court noted that those cases did not address the section 934.02(2) requirement of a reasonable expectation of privacy in an oral communication in order to claim the protection afforded by the statute. In rejecting Inciarrano's motion to exclude the tape recording, the court held that, assuming Inciarrano had a subjective expectation of privacy when he entered the victim's office with intent to do him harm, that expectation was not justified under the circumstances. 473 So.2d at 1275. In Smith, the court held that although the parties claiming a privacy right were not under arrest, there can be no reasonable expectation of privacy in conversations held in the back of a police car. 641 So.2d at 852.
In the instant case, to prevail on the privacy question, the Department was required to show first, that Pittman, O'Brien, and Wells or at least one of them, had a subjective expectation of privacy in statements they made in Sergeant Taylor's office, in the presence of each other, and in the presence of Taylor and Edwards. Second, the Department was required to demonstrate that society would be prepared to recognize that privacy expectation as reasonable. We conclude that the hearing officer was justified in finding that any subjective expectation of privacy held by Edwards's supervisors was not reasonable under the circumstances of this case. We reach this conclusion based not on the officers' suspicion that Edwards would record their statements, but because of the number of persons present when the statements were made, the place chosen for *633 the interview, and the very nature of that interview.
We affirm the Commission's final order directing Edwards' reinstatement, and awarding back pay, attorney's fees, and costs. We do so, because we conclude the record contains competent, substantial evidence to support the Commission's determination that the Department did not have cause to discipline Edwards for a violation of section 934.03(1), Florida Statutes, or for exceeding his law enforcement authority. It appears the protections afforded by section 934.03 are inapplicable in the circumstances of this case. For an oral communication to fit within the purview of chapter 934, it must be "uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." § 934.02(2), Fla. Stat. (1993); State v. Smith, 641 So.2d at 852. The Commission was entitled to find that supervising law enforcement officers engaged in the investigation and interrogation of a subordinate officer had no subjective expectation of privacy in their statements. Since the protections of section 934.03 do not apply to the oral communications here at issue, the Department has failed to show cause for terminating Edwards's employment, either for a rule violation or for exceeding his law enforcement authority.
Although we affirm the decretal provisions of the final order, we reverse that portion of the recommended order, adopted in full by the Commission, which suggests that the disciplinary interview initiated in this cause could be considered an extension of a public meeting. While the hearing officer and the Commission were entitled to find that Edwards's supervisors had no reasonable expectation of privacy in oral statements made by them in Sergeant Taylor's office, any part of that finding premised on a belief that the disciplinary interview could be considered "an extension of a public meeting," is invalid.
Accordingly, the Commission's final order is affirmed, with the exception of that portion of the order which suggests the disciplinary interview was an extension of a public meeting.
BENTON, J., concurs.
WOLF, J., dissents with opinion.
WOLF, Judge, dissenting.
I respectfully dissent. A supervisor of a public employee, investigating alleged misconduct while having no expectation that the contents of his conversation with the employee will remain private, does have a reasonable expectation that his conduct will not be subject to electronic interception.
In State v. Smith, 641 So.2d 849 (Fla. 1994), the supreme court conducted a separate analysis in determining a party's reasonable expectation to privacy pursuant to the fourth amendment and a party's right to be free from electronic interception of communication. In one case, the expectation must be that the conversation is private and that its contents will never be revealed, while in the other case, the expectation must be merely that a conversation will not be taped. In Smith, the supreme court stated, "In order to fall within the ambit of chapter 934, an oral communication must be `uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation and does not mean any public oral communication uttered at a public meeting... .'" Id. at 852 (additional emphasis added).
There is no authority suggesting that a disciplinary investigation is a public meeting as described in section 286.011, Florida Statutes, or that public officials would not have a reasonable expectation that they would not be taped while engaged in investigating alleged misconduct on the part of a public employee.
Unlike State v. Smith, 641 So.2d 849 (Fla. 1994), or State v. Inciarrano, 473 So.2d 1272 (Fla. 1985), the parties subject to the alleged illegal recording in the instant case were not involved in misconduct which would negate a societal recognition of a reasonable expectation not to be recorded. Nor does the fact that the officials suspected that the appellee might be violating section 943.03, Florida Statutes (1993), negate their reasonable expectation not to be subject to electronic interception. *634 State v. Edwards, 645 So.2d 588 (Fla. 1st DCA 1994); State v. Sells, 582 So.2d 1244 (Fla. 4th DCA 1991).
The hearing officer and the commission had no basis to find that appellee's supervisors did not have a reasonable expectation that they would not be subject to illegal taping; thus, the commission's decision should be reversed.
NOTES
[1] The effective date of the transfer was June 29, 1992.
[2] The Commission found the hearing officer's findings of fact were undisputed, in that the Department excepted only to the hearing officer's conclusions of law and his interpretations of statutes and case law.